A. V. Stackhouse v. Commissioner.
Stackhouse v. Commissioner
Docket No. 36324.
United States Tax Court
1953 Tax Ct. Memo LEXIS 103; 12 T.C.M. (CCH) 1126; T.C.M. (RIA) 53319; September 30, 1953
*103 Petitioner owned 146 shares of common stock of a corporation whose only income-producing property consisted of its lessee interest in a lease on which the net average earnings were $1,714.97 per year. Ground rent due the lessor was $2,100 per year. Preferred shareholders were entitled to 6 per cent cumulative dividends. In 1932, the corporation defaulted on ground rental payments and never again paid preferred dividends. By 1940, it owed more than $7,000 in delinquent ground rent, together with some accrued interest. Petitioner sold his shares in 1943 for the sum of $1 and took a capital loss under Sec. 23 (g) of the Code. Held, petitioner's shares became worthless before 1943 and the Commissioner properly disallowed any deduction in that year. C. Severin Buschmann, Jr., Esq., for *104 the petitioner. R. G. de Quevedo, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax, as follows: Year
Amount
1943
$567.50
1944
330.03
1945
330.00
The only issue to be decided is whether petitioner realized a capital loss from the sale of worthless securities in 1943. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Allan V. Stackhouse (hereinafter referred to as the petitioner) was a resident of Indianapolis, Indiana, during the years here in question and filed his income tax returns on the cash receipts and disbursements basis with the collector of internal revenue in that city. On December 22, 1926, petitioner leased two lots in Indianapolis from William and Nellie Carter. The lease was to run for 99 years; the lessee covenanted to pay annual ground rent in four equal quarterly installments, on the first of December, March, June, and September, as follows: 1st 10 years
$2,100 per year
2nd 10 years
2,310 per year
3rd 10 years
2,550 per year
Remaining 69 years
2,800 per year
*105 Any delinquent installment was to draw annual interest of 7 per cent until paid and gave the lessor, after 30 days' notice in writing, the right to declare the lease ended. One of the lots was improved by an apartment building of 6 units, each renting for approximately $40 to $50 per month. Petitioner agreed to erect a building on the other lot, costing not less than $25,000. The title to all buildings and improvements erected on the property was to vest immediately in the lessors, subject only to the lease. On December 22, 1926, petitioner, his wife, and one F. N. Wild formed the Thirty-Eighth and College Realty Company (hereinafter referred to as the Corporation), an Indiana corporation. Its purpose was to improve and manage the property covered by the Carter lease, which petitioner assigned to it. The Corporation was authorized to issue 150 shares of $100 par value common stock and 250 shares of $100 par value preferred stock. The preferred stockholders were to be paid cumulative dividends of 6 per cent and were entitled to vote upon default of dividend payments. Petitioner, the president of the Corporation, held 146 shares of its common stock, valued at $14,600. On December 23, 1926, the *106 J. F. Wild Company agreed to underwrite the Corporation's preferred stock issue at $94 per share for the express purpose of providing the funds for the construction of a garage on the leased property. The agreement provided for retirement of the preferred shares at par, beginning January 1, 1929, and continuing until January 1, 1940. The Corporation immediately thereafter began business. The garage was completed in 1928, at a cost of approximately $25,000, and rented at times for approximately $300 per month. Until March 1, 1931, ground rent was timely paid to the lessor, 6 per cent dividends to the preferred shareholders were paid, and 31 shares of preferred stock were redeemed on schedule. A part of the rental due on March 1, 1931, was paid on April 17 and the remainder on June 8. Payments due on June 1, September 1, and December 1, 1931, were made several weeks after the due date. By September 1, 1932, rental payments were $1,575 in arrears, with accumulated interest of $38.22. No further preferred stock dividends were paid and no shares of such stock were redeemed after 1931. On September 9, 1932, following the successive bankruptcies of the J. F. Wild Company and the Washington *107 Bank and Trust Company, the Bankers Trust Company was confirmed as the voluntary trustee of the funds of the Corporation, and the City Securities Corporation was appointed its fiscal agent. During the intervening years until December 1942, the Bankers Trust Company maintained the property, collected the rents, paid expenses and remitted the balance to the lessor. On December 3, 1942, $7,997.88 of delinquent rent was due the lessors together with some accumulated interest thereon. The Corporation had $1,540.58 in cash on hand at the end of that year. At no time during this 12-year period was there a substantial reduction in accumulated delinquent rent. The total amount due increased from approximately $1,500 in early 1933 to approximately $3,000 in January 1934, to approximately $5,000 in March 1935, to approximately $6,000 in March 1936, to approximately $7,000 in June 1940. The total amount due to the lessor, collected by the lessee, and expenses paid from December 1, 1926, to December 3, 1942, was as follows: Total rent due the lessors
$35,437.50
Collections
$41,205.10
Less: Expenses
13,765.48
Net rent received by the Corporation
27,439.62
Delinquent
$ 7,997.88
Net average annual rent earned dur-
ing period
$ 1,714.97
*108 In December 1943, petitioner sold his 146 shares of common stock to the Cities Securities Corporation for the sum of $1 and took a capital loss deduction, pursuant to section 23 (g) of the Code, on his returns for the years here in question which the respondent disallowed. The cash balance of the Corporation on December 31, 1943, was $2,600.97; it still held the Carter lease on which it had realized a net amount of $1,060.39 in that year, as follows: Total rental income
$2,439.44
Total expenses - not including rent to
owners, nor interest thereon
1,379.05
$1,060.39 It had no other known assets. The liabilities on that date approximated $30,000, exclusive of its previous pledge to retire the preferred shares of which there were some $21,900 worth outstanding. The common stock of the Corporation was worthless prior to January 1, 1943. Opinion RICE, Judge: The only question for our decision is one of fact: did the common stock of the Thirty-Eighth and College Realty Company, which petitioner sold for the sum of $1 in 1943, become worthless in that year so as to entitle him to a capital loss deduction under section 23 (g) (2) of the Code. [1], *109 rehearing denied . The burden of proving that fact rests on the petitioner, ; and we think he has failed to sustain it. It is not enough that petitioner show us that his stock was worthless in that year. He must show that it had some value at the beginning of the year and none at its close, or when he transferred it to another for a token sum. , reversed in part on other grounds, (C.A. 3, 1947), certiorari denied ; ; . *110 We said in , "There must be something identifiable to mark the period." The income tax law does not contemplate loss deductions resulting from mere fluctuation in value. . Petitioner's sale of his stock in 1943 for the sum of $1 may well have been the specific incident which impressed him that the shares were irredeemably worthless in that year. But this record offers clear evidence that the shares had no value well before January 1, 1943. In (C.A. 2, 1941), affirming our memorandum opinion, the court said at page 600: * * * "the taxpayer is at times in a very difficult position in determining in what year to claim a loss. The only safe practice, we think, is to claim a loss for the earliest year when it may possibly be allowed and to renew the claim in subsequent years if there is any reasonable chance of its being applicable to the income for those years." We think this petitioner, unfortunately, failed to claim his loss soon enough. Beginning in 1932, the Corporation's accumulated liabilities increased *111 steadily; and any hope of future dividends or liquidating value for the common stock correspondingly lessened year by year. The amount of defaulted rental payments and accumulated interest thereon grew from approximately $1,500 in 1933 to approximately $7,000 by 1940. No preferred stock was retired and dividends on such outstanding shares remained unpaid and accumulated at the rate of approximately $1,300 per year. The potential earnings of the Corporation from the leasehold remained relatively fixed. On December 31, 1942, its only assets were $1,540.58 in cash and the lease which could have been terminated at any time. The only difference in the Corporation's financial picture in December 1943, when petitioner sold his shares, was that the common stock was more hopelessly worthless than in the previous year. We need not fix the exact moment at which petitioner's shares became worthless, suffice it to say that they became worthless prior to the year of sale. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (g) Capital Losses. - (2) Securities Becoming Worthless. - If any securities (as defined in paragraph (3) of this subsection) become worthless during the taxable year and are capital assets, the loss resulting therefrom shall, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets.↩